770 F.2d 166
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
LONELL JOHNSON, JR., PLAINTIFF-APPELLANT,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, DEFENDANT-APPELLEE.
 NO. 84-1405
 United States Court of Appeals, Sixth Circuit.
 7/2/85
 
 W.D.Mich.
 AFFIRMED
 On Appeal from the United States District Court for the Western District of Michigan
 Before: KENNEDY and WELLFORD, Circuit Judges; and WEICK, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 This is an appeal from a denial of Social Security Disability and Supplemental Income benefits. Lonell Johnson, Jr., the appellant, applied for benefits on April 14, 1981. His application was denied initially and upon reconsideration, whereupon he requested a hearing, which was held on February 24, 1982. By decision dated September 13, 1982, the ALJ found that Johnson was not disabled and benefits were denied. The Appeals Council declined to review this decision on March 3, 1983. On March 22, 1983, Johnson submitted to the Appeals Council the results of a CT scan performed on January 28, 1983, which indicated the presence of a herniated disc. By letter dated May 10, 1983, the Appeals Council indicated that it was treating Johnson's submission as a request to reopen the ALJ's decision, concluding that evidence of this condition was present elsewhere in the record evaluated by the ALJ, and hence that reopening was not warranted.
 
 
 2
 Johnson was born on April 11, 1943. He has a tenth grade education. He has worked as a laborer, primarily in the contruction industry, hi-lo driver, gas station manager, and packer. He claims to be disabled, beginning in 1978 as the result of a lower back problem and the residuals from a craniotomy performed in 1981, including left side numbness, headaches and susceptibility to seizures. The ALJ concluded that although the claimant does suffer from some impairment of function, he is at least capable of performing sedentary work. Based upon this finding, the ALJ applied the Medical-Vocational Guidelines, which direct a finding of not disabled. Johnson contends that the ALJ's findings are not supported by substantial evidence; that the ALJ disregarded Johnson's testimony respecting his allegations of pain and neurological impairment, and failed to consider his impairments in combination. Appellant also contends that the ALJ erred as a matter of law in regarding appellant's statement, that he would not undergo back surgery if it were recommended to alleviate his condition, as justification for a denial of benefits.
 
 I.
 
 3
 The significant medical evidence of record begins with the December 1979 report of Dr. Eli Coats. Johnson visited Dr. Coats complaining of back pain dating back to a work related injury suffered in July 1977. Dr. Coats concluded that Johnson's neuromuscular examination was 'normal in all respects . . .. [W]e are faced with an individual who complains of back pain of uncertain etiology . . .. He has been seen by orthopedic specialties [sic] and no cause for the pain has been found.'
 
 
 4
 On March 18, 1981, Johnson was hospitalized after suffering seizures. Tests revealed a subdural hematoma and a craniotomy was performed. He was discharged on March 26. On April 15, 1981, he was examined by Dr. Katz, who reported that 'patient has done well and has been maintained on Dilantin . . . without recurrence of seizures. Patient denies increasing headaches, . . . exhibits normal coordination, strength he is able to hop on each foot without problem with balance.'
 
 
 5
 Johnson was next examined by Dr. Oliver Grin, his attending neurological surgeon, on May 8, 1981. Dr. Grin reported that 'Mr. Johnson is doing very well following his recent subdural hematoma evacuation. Mr. Johnson is neurologically normal. His craniotomy site is . . . well healed. Mr. Johnson would like to proceed with the acrylic cranioplasty. . . . In the interim, Mr. Johnson remains disabled.' He was examined again by Dr. Grin on May 21, at which time Dr. Grin reported that although the patient complained of some numbness in his fingers, '[n]umbness is subjective and not borne out with light touch and pinprick sensation. . . . There is no neurological abnormality found.' Motor strength in upper and lower extremities, pinprick and light touch were found to be symmetric.
 
 
 6
 On October 14, 1981, appellant was examined by Joseph Belsito, D.O. Dr. Belsito found that 'he had some residual weakness, and was still on his medication. He is still unemployed [sic] for his type of work which is manual labor. He is employable for other form [sic] of work, but unfortunately he would not qualify for this work because of his educational background.'
 
 
 7
 On January 26, 1982, appellant was examined by Dr. Wallace Johnson, an orthopedic surgeon. In his report, Dr. Johnson notes that he first examined appellant for lower back pain on November 26, 1979. (Dr. Johnson's 1979 report apparently was not included in the record.) Dr. Johnson found that appellant 'has a full range of motion of his upper extremities. The lumbosacral spine also demonstrated a full range of motion without paravertebral muscle spasm or tenderness. The straight leg test was negative. . . . Sensation was decreased over the left foot. . . . DIAGNOSTIC IMPRESSION: 1. Probable ruptured lumbar vertebral disc. 2. Left hemiplegia secondary to intracranial blood clot by history. This patient's back problem is still consistent with a ruptured lumbar intervertebral disc. Since this rather severe intracranial illness has occurred, he has now developed dysesthesia involving his left side as well as a slight amount of hemiplegia on the left side. . . . He is considered totally disabled from returning to any gainful employment, especially as a construction worker.'
 
 
 8
 On March 9, 1982, Dr. Grin again examined the appellant. He reported that 'Pt. has periods of headaches with beginning episode of left upper extremity aching with numbness with radiation to of [sic] numbness to thumb and digits of 2 and 3 of left hand. Short term memory losses. Left arm paresis--mild.' He checked a box classifying patient's status as 'stable' (the other choices being 'improving' and 'deteriorating'). He did not respond to questions on the same form respecting prognosis and employability.
 
 
 9
 Appellant testified that although his medication has prevented the occurrence of seizures, he has episodes where he feels a seizure is imminent at which time he has been advised by his doctors to lie down with a cold towel on his forehead and take a double dose of Dilantin. He complains of numbness and cramping on his left side, causing difficulty in holding and gripping objects, walking and climbing stairs. He testified that he experiences headaches, loss of concentration, and short term memory problems.
 
 II.
 
 10
 Review of a decision of the Secretary is limited to determining whether there is substantial evidence in the record to support the decision. Kirk v. Secretary of Health and Human Services, 667 F.2d 524, 535 (6th Cir. 1981), cert. denied, 461 U.S. 957 (1983). Although this record strongly suggests some deterioration in appellant's neurological condition, it sufficiently supports the ALJ's finding that the claimant retains the capacity at least to perform sedentary work. Appellant's contentions that the ALJ substituted his own medical judgment for that of the examining physicians and relied heavily on the 'sit and squirm' test in rejecting Appellant's testimony are unsupported by a fair reading of the ALJ's decision. The ALJ specifically found that the '[m]edical evidence disclosed that the claimant has some residual mild hemiplegia or paresis,' and that 'claimant's allegation of pain and numbness' was weighed with the medical evidence in reaching the conclusion 'that the claimant does suffer from some impairment of function.' Moreover, the appellant's heavy reliance on the CT scan submitted to the Appeals Council is misplaced, since the ALJ specifically found, presumably on the basis of Dr. Johnson's diagnosis, that the claimant 'may have a ruptured lumbar intervertebral disc.' Rather, the ALJ relied upon various statements by the examining physicians indicating the patient had a full range of motion, no specific weakness or limitations on his activities, etc., as well as his own observation of the appellant and the credibility of appellant's testimony, see Beavers v. Secretary of Health, Education and Welfare, 577 F.2d 383, 387 (6th Cir. 1978) (ALJ's opportunity to observe claimant and evaluate his testimony 'should not be discarded lightly'), in concluding that neither claimant's lower back problem nor the residual deficits of the hematoma and craniotomy[1] were of disabling severity. Nor, on a fair reading of the ALJ's decision, is there merit to appellant's contention that the ALJ failed to consider these impairments in combination.
 
 III.
 
 11
 In response to a hypothetical question from the ALJ, appellant testified that he would not undergo back surgery if it were recommended because he had friends who had that kind of surgery and were worse off after than they were before. Appellant is correct in arguing that this statement does not provide a legal basis for denying disability benefits. See Fraley v. Secretary of Health and Human Services, 733 F.2d 437, 440 (6th Cir. 1984); Young v. Califano, 633 F.2d 469, 473 (6th Cir. 1980); Hephner v. Mathews, 574 F.2d 359, 362 (6th Cir. 1978).
 
 
 12
 When the ALJ has applied an incorrect legal standard in making his findings, the substantial evidence standard of review no longer applies. Branham v. Gardner, 383 F.2d 614, 626-27 (6th Cir. 1967). Failure to apply the correct legal standard or to provide the reviewing court with a sufficient basis to determine that the correct legal principles have been followed necessitates a remand to the Secretary for further findings. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982). In the instant case, however, it is clear that the ALJ's decision did not rely upon claimant's statement that he would not undergo surgery. The ALJ's ultimate finding was that claimant's back condition was not of disabling severity; not that it was disabling but that claimant was not entitled to benefits because it was remediable by a prescribed course of treatment that claimant refused to follow.
 
 
 13
 The judgment of the District Court upholding the final decision of the Secretary is affirmed.
 
 
 
 [1]
 Although not noted by the ALJ or District Court, the various doctors' reports all indicate that the claimant is a heavy drinker, which may contribute to his headaches and short term memory loss