[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MAY 2, 2006
THOMAS K. KAHN
CLERK

_____

No. 05-16286
Non-Argument Calendar

_____

D. C. Docket No. 04-01321-CV-T-23-MAP

RUTH L. NYBERG,

Plaintiff-Appellant,

versus

COMMISSIONER OF SOCIAL SECURITY,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

**(May 2, 2006)**

Before DUBINA, HULL and WILSON, Circuit Judges.

PER CURIAM:

Ruth L. Nyberg appeals the district court's order affirming the decision of

the Social Security Commissioner (the "Commissioner") denying her claim for disability and disability insurance benefits under the Social Security Act.[1] According to Nyberg, the administrative law judge (the "ALJ") committed reversible error when, in the course of determining that Nyberg was not disabled, he failed to acknowledge or address the opinion of Dr. Myrna Trowbridge, a treating physician.[2] The Commissioner responds that any such error was harmless, and argues that substantial evidence supports her decision. We reverse and remand.

## I. STANDARD OF REVIEW

In a social security appeal, our review is limited to determining whether the ALJ's decision is supported by substantial evidence, and whether the correct legal standards were applied. *See Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997); 42 U.S.C. § 405(g). "Substantial evidence is defined as more than a scintilla, i.e., evidence that must do more than create a suspicion of the existence of the fact to be established, and such relevant evidence as a reasonable person would accept as adequate to support the conclusion." *Foote v. Chater*, 67 F.3d 1553,

---

[1] The parties consented, pursuant to 28 U.S.C. § 636(c), to a magistrate judge conducting the district court proceedings.

[2] Although Nyberg also contends that the ALJ should have re-contacted Dr. Trowbridge, Nyberg did not raise this argument before the district court. Accordingly, we will not consider it here. *See Passopulos v. Sullivan*, 976 F.2d 642, 645 (11th Cir. 1992) (citations omitted).

1560 (11th Cir. 1995) (per curiam) (internal citation omitted). "This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam). "We cannot, however, conduct a review that is both limited and meaningful if the ALJ does not state with sufficient clarity the legal rules being applied and the weight accorded the evidence considered." *Ryan v. Heckler*, 762 F.2d 939, 941 (11th Cir. 1985). Thus, the ALJ must develop a full and fair record, and evaluate all the relevant evidence. *See Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981). "[W]e evaluate the [ALJ's] findings in light of the entire record, not only that evidence which supports [his] position." *Owens v. Heckler*, 748 F.2d 1511, 1515 (11th Cir. 1984) (per curiam).

## II. DISCUSSION

In describing the proper evaluation of opinion evidence on disability claims, the Social Security Administration ("SSA") states the following:

> Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

20 C.F.R.§ 404.1527(d)(2).[3]  Indeed, the ALJ "must specify what weight is given to a treating physician's opinion and any reason for giving it no weight, and failure to do so is reversible error."  *MacGregor v. Bowen*, 786 F.2d 1050, 1053 (11th Cir. 1986); *see Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (ALJ must accord substantial or considerable weight to opinion of treating physician unless "good cause" is shown to the contrary); *Broughton v. Heckler*, 776 F.2d 960, 961-62 (11th Cir. 1985) (per curiam) (same); *see also Wiggins v. Schweiker*, 679 F.2d 1387, 1390 (11th Cir. 1982) (ALJ's failure to mention appellant's treating physician and the weight, if any, given to the treating physician's opinion constituted grounds for reversal).  An ALJ's "lack of explanation" for failing to address a treating physician's opinion is "particularly troublesome" when that physician was the claimant's "long-time treating physician."  *Ryan*, 762 F.2d at 942.

In the instant case, it is uncontroverted that the reports of Dr. Trowbridge were part of the record, and that the ALJ failed to address Dr. Trowbridge's opinion regarding Nyberg's condition and limitations during the relevant time period: June 1, 2000 (the alleged date of onset of Nyberg's disability) through

---

[3] A "treating source" (i.e., a treating physician) is a claimant's "own physician, psychologist, or other acceptable medical source who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."  20 C.F.R. § 404.1502.

September 30, 2001 (the date Nyberg's disability insured status expired). Even so, the Commissioner argues, Dr. Trowbridge was not really a "treating" physician, at least insofar as Nyberg's claimed disability involved Parkinson's disease. Dr. Trowbridge, the Commissioner points out, indicated on a June 2002 "Attending Physician's Initial Statement of Disability" form (the "disability form") that she (Trowbridge) was treating Nyberg's hypothyroidism, while Dr. Jennifer Pallone was "in charge of the Parkinson's [and] the depression." As noted above, a treating physician is one who not only provides (or has provided) the claimant with medical treatment or evaluation, but also has (or has had) an "ongoing treatment relationship" with the claimant. 20 C.F.R. § 404.1502. A claimant generally has an "ongoing treatment relationship" with a physician when medical evidence establishes that the claimant sees or has seen the physician "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the claimant's] medical condition(s)." *Id.* The record indicates that Dr. Trowbridge treated Nyberg on numerous occasions throughout the relevant time period, made notes as to Nyberg's tremors and "hemiparkinsonism," and referred her to (and received updates from) various other medical professionals, including Dr. Pallone. Thus, the Commissioner's argument fails to persuade us that Dr. Trowbridge was not a treating physician (i.e., a

5

"treating source") within the meaning of § 404.1502.

Even if Dr. Trowbridge was a treating physician, the Commissioner argues, the ALJ's failure to consider her opinion was harmless error, because the opinion did not contradict the ALJ's findings and was unsupported by objective medical evidence. As the Commissioner points out, Nyberg takes issue with the ALJ's statement that "no treating physician has expressed the opinion that the claimant has limitations greater than those determined in this decision." One reason Nyberg does so is that Dr. Trowbridge stated on the disability form that Nyberg's limitations had been "slowly progress[ing] since spring of 2000"; i.e., gradually getting worse. This observation, the Commissioner contends, is vague, and does not really conflict with the ALJ's determination that Nyberg's condition and limitations were not so severe at the time her insured status expired (in September of 2001) as to prevent her from working at certain jobs then existing in the national economy in significant numbers. Furthermore, the Commissioner argues, any indication to the contrary inferred from Dr. Trowbridge's reports would be unsupported by objective medical evidence. *See Crawford*, 363 F.3d at 1159 (treating physician's report can be discounted when it is unaccompanied "by objective medical evidence or wholly conclusory").[4]

---

[4] The Commissioner states, for example, that there is no evidence Dr. Trowbridge ever conducted a functional capacities evaluation of Nyberg to help determine the extent of her

In essence, the Commissioner contends (and the district court believed) that, even if the ALJ had considered Dr. Trowbridge's opinion, the outcome of the case could not reasonably have changed. *See Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983) (ALJ's mischaracterization of claimant's past work was harmless error, because such characterization of vocational factors was irrelevant where the ALJ found no severe impairment). The instant case, however, is not one where the unmentioned physician's opinion merely supported the ALJ's conclusion, and was thus unnecessary. *See Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 547 (6th Cir. 2004).[5] On the contrary, the potential impact of Dr. Trowbridge's opinion on the ALJ's analysis is strongly and reasonably disputed by the parties.[6] Thus, we cannot say that the failure to address Dr. Trowbridge's opinion was harmless without re-weighing the evidence and engaging in conjecture that invades the

---

limitations.

[5] Nor has it been shown that Dr. Trowbridge's opinion was "so patently deficient that the Commissioner could not possibly credit it," or that the Commissioner clearly met the goal of 20 C.F.R. § 404.1527(d)(2) even though she did not comply with its terms. *See Wilson*, 378 F.3d at 547.

[6] Notably, the Commissioner's position on this issue appears somewhat inconsistent. Although the Commissioner contends initially that Dr. Trowbridge's opinion did not conflict with the ALJ's determination regarding Nyberg's limitations, the Commissioner then claims that "Dr. Trowbridge's purported opinion concerning [Nyberg's] limitations conflicts with the medical findings of Dr. Pallone," which the ALJ relied upon heavily. Indeed, Dr. Trowbridge's reports seem to indicate that Nyberg's tremors were only growing worse over time, while the ALJ concluded that the tremors had been significantly reduced through medication by August of 2001.

province of the ALJ. *See Moore*, 405 F.3d at 1214 (stating that, where ALJ failed to consider certain factors and indicate their impact on his ultimate conclusion as to claimant's residual functional capacity, we "[could not] even evaluate the Commissioner's contention that the ALJ's error was harmless"); *Wiggins*, 679 F.2d at 1390 (remanding where we were "unable to determine whether the ALJ applied the proper legal standard and gave the treating physician's evidence substantial or considerable weight or found good cause not to do so"); *Wilson*, 378 F.3d at 546 ("A court cannot excuse the denial of a mandatory procedural protection simply because, as the Commissioner urges, there is sufficient evidence in the record for the ALJ to discount the treating source's opinion and, thus, a different outcome on remand is unlikely.").

## III. CONCLUSION

Contrary to the judgment of the district court, we cannot say that the ALJ's failure to consider Dr. Trowbridge's opinion was harmless. The judgment of the district court is therefore reversed, and the case is remanded with instructions to remand the matter to the ALJ for further proceedings not inconsistent with this opinion.

**REVERSED AND REMANDED.**